**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HOUSTON E. BALDWIN,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:09-cv-2059-Orl-31DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for disability insurance benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## *I. BACKGROUND*

### A.   Procedural History

Plaintiff filed for a period of disability, and disability insurance benefits on November 29, 2006, alleging an onset of disability on August 1, 2004[1], due to back and hip pain, diabetes mellitus, and high blood pressure. R. 9, 31, 37, 40, 70, 72, 115-19, 136, 142, 156, 161. His application was denied initially and upon reconsideration. R. 78-79. Plaintiff requested a hearing, which was held on February 23, 2009, before Administrative Law Judge Douglas Abruzzo (hereinafter referred to as "ALJ"). R. 19. In a decision dated July 13, 2009, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 9-16. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 1. The Appeals Council denied Plaintiff's request on October 9, 2009. R. 4. Plaintiff filed this action for judicial review on December 7, 2009. Doc. No. 1.

### B.   Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of back and hip pain, diabetes mellitus, and high blood pressure. R. 31, 37, 40, 70, 72, 136, 142, 156, 161. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from low back pain secondary to disc degenerative disease, which was a "severe" medically determinable impairment but not an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 11-12. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work except he must avoid climbing ropes or scaffolds and ladders exceeding six feet; and for sedentary occupations only, a required sit/stand/walk option permitting no more than five steps from the work station, performing a stretch maneuver, returning to the work station within one minute,

---

[1] Following the hearing, Plaintiff amended the alleged onset date from June 15, 2003 to August 1, 2004. R. 115, 136.

performed not more than five times each hour, and avoidance of certain environmental conditions. R. 12.

Based on Plaintiff's RFC, the ALJ determined that he could perform his past relevant work as a secondary school teacher. R. 14-15. The ALJ found in the alternative that, considering Plaintiff's vocational profile and RFC, and applying the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, as well as the testimony of the vocational expert ("VE"), Plaintiff could perform work existing in significant numbers in the national economy as school secretary. R. 15. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 15-16.

Plaintiff now asserts two points of error. First, he argues the ALJ erred by failing to obtain an updated physical consultative evaluation of Plaintiff's impairments and functional limitations where he had had no health or medical insurance and no attending healthcare provider for three years and no medical evaluation for more than two years, and the record indicated a worsening of his impairments. Second, he claims the ALJ erred by failing to resolve an ambiguity in the consultative examiner's report that Plaintiff could sit, stand, and walk for only 4 hours in an 8-hour workday and by according only "limited weight" to the report allegedly without explanation. For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### *III.  ISSUES AND ANALYSIS*

**A.    A second consultative examination**

Plaintiff argues that the ALJ failed to fully and fairly develop the record by failing to obtain an updated physical consultative evaluation of Plaintiff's impairments and functional limitations when he had no health or medical insurance and no attending healthcare provider after February 3, 2006, until his evidentiary hearing on February 23, 2009, a period of three years; and no medical evaluation of any sort after January 29, 2007 (Dr. Perdomo's examination) until the hearing, a period of more than two years.  He also argues that a second consultative examination should have been ordered because the evidence as a whole indicated a worsening of his impairments and a further decline in his functional capacities.  The Commissioner argues that Plaintiff failed to prove that he was disabled, and the ALJ was not required to go on a fishing expedition for evidence that might help Plaintiff's claim.

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).  Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997).  The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917.  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).

Plaintiff cites 20 C.F.R. §404.1519a(b), that a CE is required when all of the following conditions are present: (i) a conflict or inconsistency arises; (ii) the conflict or inconsistency must be

-5-

resolved; (iii) the conflict or inconsistency cannot be resolved from other medical sources; and (iv) the evidence as a whole is insufficient to support a decision. Plaintiff argues that in his case an updated consultative examination should have been ordered because there is evidence his condition has worsened or deteriorated during the multi-year period in which he had no medical treatment.

He argues that there is a three-year period adjudicated by the ALJ in which there is no medical treatment evidence, and a two-year period in which there is no medical evidence whatsoever. He argues that the ALJ should have complied with Plaintiff's request to order a second CE before the evidentiary hearing (R. 19, 106), and then an up-to-date medical evaluation would have been available for the ALJ's consideration in fully and fairly developing the record and in rendering an informed decision.

As evidence of the deterioration in his physical condition, Plaintiff points to his hearing testimony[2] that he could walk only about 10 yards without his walker (R. 50), and contrasts it with Dr. Perdomo's notes from the January 2007 consultative examination that Plaintiff could walk down the hall without any difficulties and did not require any assistive device for ambulation at that time. R. 230. Plaintiff argues that this "evidentiary inconsistency" indicates a obvious worsening or deterioration in Plaintiff's ability to ambulate between the date of the January 2007 consultative examination and the hearing, February 2009; thus, a second consultative examination should have been ordered because there were no other medical records from the time period to resolve the inconsistency. The Court agrees that the ALJ should have ordered a more recent consultative examination, given the clear deterioration in Plaintiff's condition, including his need to use a walker and his lack of access to medical care and prescription pain medications.

---

[2] Plaintiff also cites his response in an undated Disability Report that his ability to perform activities of daily living "got worse." R. 175.

Plaintiff points to notes in the CE report by Dr. Perdomo that Plaintiff had run out of pain and other medications a few months earlier and the reason he was not taking the medications was not because he had no pain, but because he was unable to afford them. *See* R. 230. At the 2009 hearing, Plaintiff testified that he had a few prescription pain pills (Naproxin) left (from 2005), but because he did not have a doctor, he was only taking over the counter medication. R. 38. Plaintiff argues that without prescription pain medications from a physician, "one is left to assume that [his] pain experiences became more intense in the intervening years after the CE – and his functioning became increasingly more limited – than when he was able to afford prescription medications; it may be particularly reasonable to make this assumption because his ability to ambulate had deteriorated to the point where he had to use a walker provided by his sister to even walk 10 yards." Doc. 14. Plaintiff also points to notes in the CE that Plaintiff had a high blood pressure reading of 190/100 for which "[h]e needs adequate continuity of care for proper management of his multiple chronic diseases. He was made aware of his elevated blood pressure and encouraged to see his primary care physician." R. 231. Plaintiff further argues the second CE was necessary to update the status of his uncontrolled hypertension and diabetes since the date of Dr. Perdomo's CE (in 2007) and adequately determine whether his diabetes and hypertension were severe because he did not have diabetic and hypertension medications for an indeterminate time period starting before the date of Dr. Perdomo's CE.

Plaintiff also argues that a second CE was required to evaluate problems with his hands that he first mentioned during his testimony at the hearing. R. 41. He argues the ALJ gave this impairment little consideration because when he asked Plaintiff if any doctor had told him what was wrong with his hands, Plaintiff simply answered "no," (R. 41) and the ALJ made no further inquiry about Plaintiff's hand impairments. He argues that deterioration in his hands was another

inconsistency with previous records because Dr. Perdomo had noted normal grip strength and fine manipulation at Plaintiff's CE in January 2007; thus, Plaintiff argues, there was a worsening of the condition of his hands and the ALJ should have ordered a new CE.  R. 231.

The Commissioner responds that the ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision, citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).  A consultative examination need not be obtained to establish absolute certainty regarding a claimant's condition, as the Social Security Act requires only substantial evidence to support the ALJ's findings, citing *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).  The Commissioner contends that Plaintiff's arguments are based on his own lack of treatment and subjective complaints, which do not create an inconsistency in the record, particularly because the ALJ found the complaints not entirely credible, and the record was sufficient for the ALJ to make an informed decision with any additional consultative examination.  Doc. 15.  The Commissioner argues that Plaintiff's lack of treatment suggests his condition was not a limiting as he claimed and Plaintiff's claim that a second consultative examination would produce more significant findings is speculation.  The Commissioner further argues that the ALJ's finding of Plaintiff's hypertension and diabetes as non-severe was also appropriate because there was not evidence that these conditions had any impact on his ability to work, citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

The Court finds that the ALJ's decision, based on medical treatment evidence for Plaintiff's back and other impairments dating primarily from 2004 to 2005, was not based on substantial evidence. The ALJ relied on Plaintiff's records, some of which had not been updated for four years prior to the hearing:

> [T]he claimant alleged that he has been diagnosed with hypertension, diabetes, and hyperlipidemia. Medical records from Orlando Center for Internal Medicine and Primary Care [from 2005 to February 2006] . . . [T]hese conditions are non-severe.
>
> * * *
>
> The record reveals that the claimant was evaluated at The Spine and Scoliosis Center in March 2004, for low back pain that began after falling at work. At the initial evaluation, Dr. Geoffrey Stewart noted that the claimant had mild diffuse tenderness to palpation in the back area and his range of motion was mildly limited in all planes. he assessed the claimant with a lumbar strain, lumbosacral contusion, and a possible disc injury. Subsequently, MRI results indicated degenerative changes and lumbar spinal stenosis at L4-5 and L5-S1. However, there was no evidence of acute disc herniation. The claimant was treated with over-the-counter medication and physical therapy. Follow-up notes by Dr. Stewart indicated that the claimant's condition had improved and that he had continued working light duty.
>
> The claimant underwent a consultative examination in January 2007, by Dr. Alex Perdomo. Dr. Perdomo noted a limited range of motion in the upper extremities and thoracolumbar spine, and positive straight leg raise in both the supine and sitting position. He diagnosed the claimant with chronic lower back pain with moderate to severe musculoskeletal functional limitations, and left-sided lower extremity radiculopathy. Although Dr. Perdomo found that the claimant had a history of herniated lumbar disc and lumbar spinal stenosis, there was no diagnostic evidence in this record to support this diagnosis.
>
> Dr. Stewart's physical evaluation [in 2004] revealed full and painless range of motion in the hips, knees, and ankles, and normal range of motion in the neck area. Although the claimant exhibited positive straight leg raise and Lasegue on the left for the buttocks and thigh area, he showed normal gait and was able to heel walk and toe walk.
>
> As for the opinion evidence, the undersigned gives limited weight to the opinion by Dr. Perdomo [from 2007], who concluded that the claimant was capable of standing, walking, and sitting for four hours out of an eight-hour workday with normal breaks; he can occasionally lift and carry no more than fifteen to twenty pounds; and he should avoid repetitive bending, stooping, or crouching. Additionally, the undersigned gives little weight to the opinion testimony rendered by the state's disability determination services agency, who reviewed the claimant's medical records in connection with the present disability claim.
>
> In sum, the above residual functional capacity assessment is supported by the medical records of the claimant's treating physician, Dr. Geoffrey Stewart [in 2004]; the consultative examination by Dr. Alex Perdomo [in 2007]; and the observations of the undersigned at the hearing held herein.

R. 13-14 (internal citations to record omitted).

At the time of the hearing on February 23, 2009, Plaintiff testified that he did not have a doctor, he had last seen a doctor for his back in 2005, and he only took over-the-counter medications for the pain. R. 38, 39. The medical records support Plaintiff's testimony that he had received no care for an extensive period of time, and that this was due to his inability to afford such care.

Records of Plaintiff's treatment at The Spine and Scoliosis Center in March 2004 (after his back injury at work) indicate that at the initial evaluation, Dr. Stewart found Plaintiff had mild diffuse tenderness to palpation in the back area and his range of motion was mildly limited in all planes, and he diagnosed lumbar strain, lumbosacral contusion, and a possible disc injury; Plaintiff was assigned to light duty at work. R. 228-29. MRI results from April 2004 indicated degenerative changes and lumbar spinal stenosis at L4-5 and L5-S1, there was "no evidence of acute disc herniation." R. 227. In June 2004, Dr. Stewart reported that Plaintiff's back pain was improving, and there were no focal neurological deficits; Plaintiff was prescribed over-the-counter medication and physical therapy as treatment, and epidural injections, which he declined. R. 224. Notes of Dr. Stewart from the July 2004 examination of Plaintiff's back revealed slight limitation of motion in all planes, with no focal tenderness or spasm; straight leg raising was negative bilaterally; and there were no motor or reflex deficits; Plaintiff's condition had slightly improved and he continued working light duty. R. 223. Plaintiff returned two more times in 2005 to see Dr. Stewart for medication refills and there were no comments about any examination or observations of his condition. R. 221. Plaintiff had no further orthopedic examinations from July 2004 until Dr. Perdomo's CE in January 2007.

The Commissioner does not dispute that Plaintiff received no medical care from February 3, 2006, when he was last seen by Dr. Nathanson (R. 211), until the consultative examination performed by Dr. Perdomo in January 2007 (R. 230-31), and no further care prior to the hearing in February

2009. At the consultative examination, Plaintiff's chief complaint was chronic low back pain, and Plaintiff stated that his symptoms were usually triggered by standing, walking, or sitting for more than 20 to 30 minutes. R. 230. Plaintiff reported that he had experienced a job-related lower back injury in 2004 and had stopped working full time. R. 31, 55, 230. Plaintiff stated that he had no medical insurance or financial resources, and that he had been unable to pursue any further treatment. R. 230. At the hearing, Plaintiff testified that he worked through July 30, 2004, and that he had settled his workers compensation case (when he was injured at Knox Nursery) for $16,000 and he could not work after this injury[3]. R. 26, 32, 36. Records from Plaintiff's treating physicians report that he was working light duty following his work-related injury during 2004. R. 223-26 (May-July 2004). Medical records support Plaintiff's testimony that he could not afford medical care in that records from Orlando Center for Internal Medicine and Primary Care in December 2008 (his only appointment during the period) show that a doctor there referred Plaintiff to Shepherd's Hope for free medical care and medications when he was treated there on the single occasion (in December 2008) for low back pain. R. 240.

The ALJ was faced with a large gap in the treating medical records after 2005 – with the exception of the January 2007 CE – yet did not order an updated CE, despite the request of Plaintiff before the hearing (R. 106) and during the hearing. R. 19. The ALJ stated at the hearing, "[I]f I think we need it after the hearing we'll go ahead and do that. *The only reason I didn't do that is because it was so close in time to the hearing.* I thought it might create another problem for us." R. 19 [emphasis added]. The ALJ's decision not to order an updated CE in light of the outdated medical

---

[3] The Commissioner contends that Plaintiff reported to SSA staff that he worked part-time following the injury until 2005 (R. 145), however, Plaintiff testified at the hearing that he was paid half-salary while he was working light duty for Knox Nursery and Workers Compensation made up the difference. R. 54.

records and Dr. Perdomo's limitations (discussed below) on Plaintiff's RFC was error and the ALJ's decision was not based on substantial evidence.

### B.     RFC and the consultative examiner's opinion

Plaintiff argues that the ALJ erred in failing to resolve an ambiguity in Dr. Perdomo's consultative examination report that Plaintiff could sit, stand and walk for only 4 hours in an 8-hour workday. Plaintiff argues that he was unable to cumulatively perform any of the three activities – standing, sitting, or walking – for more than 4 hours in an 8-hour workday, thus precluding substantial gainful activity. Plaintiff argues that because the ALJ failed to provide any reasons for according "limited" weight to Dr. Perdomo's CE report (R. 14) and he failed to explain the limited weight he accorded or to explain to what aspects of Dr. Perdomo's report he accorded such weight. Plaintiff contends that his representative raised this precise issue at the hearing, arguing that Dr. Perdomo's CE report was unclear as to whether the 4-hour limitation pertained to standing, walking and sitting separately, or to the total time allowed for these exertional demands in an 8-hour workday. R. 64. SSA staff also contacted Dr. Perdomo to follow up on his opinion and he indicated the four hours was the maximum for any activity.

At the hearing, the ALJ noted that there was an ambiguity in Dr. Perdomo's opinion. R. 64. But the ALJ stated that he did not think it was "necessarily controlling in the case anyway" so he would proceed as normal. R. 64. The ALJ did not resolve the ambiguity, but instead decided to give "limited weight" to Dr. Perdomo's opinion that Plaintiff was capable of standing, walking, and sitting for four hours out of an eight-hour workday with normal breaks. R. 14. However, the ALJ somewhat inconsistently also found that the RFC was supported in part by Dr. Perdomo's CE report. R. 14 (citing R. 230).


The Commissioner argues that the ALJ properly gave Dr. Perdomo's opinion limited weight and he was not entitled to any special deference as a one-time examiner, but concedes that the ALJ "could have been more clear in his evaluation." Dr. Stewart noted MRI results from April 2004 which indicated degenerative changes and lumbar spinal stenosis at L4-5 and L5-S1. Particularly in light of the fact that Dr. Perdomo's CE and functional limitation opinions were the only medical opinions in the record for the five years between Dr. Stewart's orthopedic last treatment of Plaintiff in 2005 and the 2009 hearing, it was error for the ALJ not to resolve any "ambiguity" perceived in Dr. Perdomo's limitation opinion.

On remand, it is respectfully **RECOMMENDED** that the ALJ be required to order an updated consultative examination – preferably with an orthopedic specialist – and if there are any ambiguities in the CE's assessment of Plaintiff's RFC, the ALJ address those directly with the CE.

### *IV. CONCLUSION*

For the reasons set forth above, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk of the Court be directed to enter judgment and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 24, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy